UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

TIMOTHY J. UPCHURCH,

        Plaintiff,

   v.

TIMOTHY M. O'BRIEN,                        Case No. 3:19-cv-00165

MARGARET M. O'BRIEN,

ALBERT D. MOUSTAKIS,

STEVEN M. LUCARELLI,

SHERIFF JOSEPH FATH,

DEPUTY SHERIFF ERIC NEFF,

and

DEPUTY SHERIFF RANDALL SCHNEIDER,

        Defendants.

---

## DEFENDANTS TIMOTHY AND MARGARET O'BRIENS'
## BRIEF IN SUPPORT OF RULE 11 MOTION FOR SANCTIONS

---

## INTRODUCTION

Plaintiff, Timothy Upchurch ("Upchurch"), filed the above-captioned matter on February 28, 2019, under the Racketeer Influenced and Corrupt Organization Act ("RICO"). See 18 U.S.C. §§ 1961-1964. Plaintiff named Timothy and Margaret O'Brien (the "O'Briens") (the former owners of the Everett Resort in Eagle River, Wisconsin), Steven Lucareli (the O'Briens' attorney), Vilas County Sheriff Joseph Fath, Vilas County Deputy Sheriffs Eric Neff and Randall Schneider, and Vilas County District Attorney Albert Moustakis.

Plaintiff's Complaint is not warranted under existing law and is completely devoid of evidentiary support. This Complaint is riddled with factual inaccuracies and falsehoods. It was filed simply as a means for Upchurch to continue his well-documented campaign of harassment against the O'Briens, as well as other Defendants named in this action. Therefore, the O'Briens bring this Motion for Sanctions under Fed. R. Civ. P. 11(c).

The O'Briens served Plaintiff's counsel with the requisite "safe harbor" letter on May 6, 2019, pursuant to Fed. R. Civ. P. 11(c)(2). (Affidavit of Jennifer M. Luther, ¶ 17, Ex. 15, Safe Harbor Letter.) Said letter enclosed a copy of the instant Motion for Sanctions, Affidavit of Timothy O'Brien, and Affidavit of Jennifer M. Luther that is being filed with this Brief. The "safe harbor" letter informed Plaintiff that the O'Briens would file the enclosed Motion for Sanctions if Plaintiff's Complaint against the O'Briens was not voluntarily dismissed with prejudice within 21 days from the date the letter was served. It has been more than 21 days since said letter was served. Plaintiff has not voluntarily dismissed his Complaint against the O'Briens. (*Id.* ¶ 19.)

The O'Briens bring this Motion, requesting that this Court enter an order, pursuant to Rule 11, declaring that the Complaint filed by Upchurch against the O'Briens in the above-captioned matter lacks any basis in law and/or fact and has been brought for an improper purpose, and awarding appropriate sanctions against Plaintiff and his counsel.

## STATEMENT OF FACTS

Upchurch alleges that he held an easement from his cottage to Catfish Lake, across the Everett Resort property owned by the O'Briens. (Dkt. 1, Compl., ¶ 11.) He alleges that the O'Briens acted to deny his right of access to Catfish Lake under the alleged easement. He alleges that Timothy O'Brien influenced local law enforcement to prosecute him for crimes based upon the exercise of his easement. Simply put, these allegations are false.

Upchurch's Complaint does not set forth any facts to support his allegation that he owned real property with easement rights across the O'Briens' property. This is because he *never* owned the real property he vaguely describes in his Complaint. The Complaint does not set forth an address or legal description or refer to any recorded document to support his allegation that he owned real property with easement rights.

Upchurch *resided* at 1125 Cranberry Shores Road, Eagle River, Wisconsin at all times material hereto. (Luther Aff., ¶ 4, Ex. 1, Sheriff's Report No. 13-004696, p. 8 of 11; *see also* Affidavit of Timothy M. O'Brien, ¶¶ 2-7, Exs. 1-6, Letters from Upchurch.) A tract search conducted by Vilas Title Service, Inc. for 1125 Cranberry Shores Road reveals that Upchurch was *never an owner* of this property. (Luther Aff., ¶ 5, Ex. 2, Title Search.) As of May 15, 2015, Upchurch no longer resided on Cranberry Shores Road. (Luther Aff., ¶ 6, Ex. 3, Sheriff's Report No. 15-004675, p. 5 of 8.)

Nevertheless, Upchurch has been obsessed with "his" easement rights for years, and as a result, has waged a campaign of harassment against the O'Briens. For example, Upchurch made the following statements in written letters to the O'Briens and their lawyer over the years:

> "I will guarantee you that if you mess with me I will see to it and even finance the project of putting in a public beach, picnic tables, barbeque grills, etc. I just want to use the access at my leisure without the consent of sum bully – **asshole like yourself**…Thanks" (signed) Tim Upchurch (September 10, 2003)

> "We will use it as we see fit you **fucking Douche Bag**." (January 31, 2012)

> "…surrounding your **piece of shit property**…What a fool you are…I will be happy to deliver (this letter) you **cock sucker**! … **Dumb Ass**… Being on the National Register of Historic Places makes you open to the public … I'm going to have everything re-surveyed for free by a friend and bulldoze where needed … **you're fucked**…" (signed) Tim Upchurch (March 28, 2012)

> "We will install nice little signs that mark Everett Estate Easements to avoid confusion. If you don't pick up your garbage I will leave it in your front yard & send you a bill for clean up." (signed) Tim Upchurch (April 22, 2012)

"**You are both cowardly little bitches and a discrace (sic) to all of humanity! I hope this letter doesn't frighten you. Feelings of fear and paranoia are normal when dealing with the pathological mind.**" Signed by "**Guess who?**" (Letter to Steve Lucareli, the O'Briens' attorney, May 1, 2014)

"Good luck, Asshole." (Facsimile to Steve Lucareli, September 7, 2016)

(O'Brien Aff., ¶¶ 2-7, Exs. 1-6 (emphasis added)).

The O'Briens complained to the Vilas County Sheriff's Department about Upchurch's behavior, which resulted in the Sheriff's Department issuing two Service of Warning – Stalking Letters to Upchurch on April 24, 2012. (Luther Aff., ¶ 7, Ex. 4, Sheriff's Dept., Stalking Letters.) The letter details that Upchurch engaged in conduct which could be interpreted as "stalking" under Wis. Stat. § 940.32, which is a felony. The letters constituted a formal warning as to both O'Briens to Upchurch.

Undeterred, Upchurch trespassed on the O'Briens' property and stole a trail camera in May of 2013, because such camera had recorded Upchurch cutting down a privacy fence on O'Briens' property. (Luther Aff., ¶ 4, Ex. 1, Sheriff's Report No. 13-004696.) District Attorney Moustakis – a named Defendant in this lawsuit - filed a criminal complaint against Upchurch on May 30, 2013, charging him with theft of movable property from the O'Briens' property. *See State of Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2013CM0174. On January 24, 2014, Upchurch entered a plea of no contest and was found guilty of theft of moveable property. The circuit court entered a judgment of conviction on January 27, 2014. The sentencing court ordered that Upchurch could not use his alleged easement and could not be present on the Everett Resort property until his rights were declared by a court, and that only then could he use whatever rights were awarded by the court. (Luther Aff., ¶ 8, Ex. 5, CCAP Report for Case No. 13CM174.) There is no record

of any legal proceeding or lawsuit filed by Upchurch ever seeking a declaration of his property rights in state court.

On May 20, 2013, (prior to the filing of the charges referenced above), Deputy Randy Schneider received a voicemail message from an individual identifying himself as Timothy Upchurch. (Luther Aff., ¶ 6, Ex. 3, Deputy Incident Report No. 15-04675.) Upchurch stated in the voicemail message that no one was going to prosecute him for criminal trespass or criminal damage to property. (*Id.*) He stated that the O'Briens are playing the Sheriff's Department for fools. (*Id.*) He went on to state law enforcement has not heard the last of him. (*Id.*) **Upchurch stated he was going to keep going after the guy, referring to O'Brien.** (*Id.*)

On August 16, 2013, the Town of Washington Chairman, James Spring, met with a Vilas County Sheriff's Deputy to report a concerning telephone call he received from Upchurch. (Luther Aff., ¶ 17, Ex. 14, Deputy Report for Incident 13-004395.) Mr. Spring reported that Upchurch called him complaining about getting in trouble with the police for things he had done at the Everett Resort. (*Id.*) Upchurch admitted to Mr. Spring that he had cut down a fence with a chainsaw twice. (*Id.*) Upchurch stated that O'Brien put up security cameras, but he "**fixed [O'Brien's] ass**" by taking out the SD card and erasing the pictures. (*Id.*) Upchurch commented that "**he will 'get him,' referring to O'Brien again**." (*Id.*) Mr. Spring was concerned by the call and reported to the Vilas County Deputy, "**Unchurch is fanatical about the issue.**" (*Id.*)

In May 2015, District Attorney Moustakis filed another criminal complaint against Upchurch, charging him Felony Stalking, Possession of THC, and Possession of Drug Paraphernalia. (Luther Aff., ¶ 16, Ex. 13, Amended Complaint in 15CF61. These charges were subsequently pled down to misdemeanors. On April 14, 2016, Upchurch entered a plea of no contest and was found guilty of Criminal Damage to Property and Disorderly Conduct. *See State*

*of Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2015CF0061. On June 30, 2016, the sentencing court ordered that Upchurch have no contact with the O'Briens and not go upon their premises. (Luther Aff., ¶ 9, Ex. 6, CCAP Report for Case No. 15CF61.)

In his Complaint, Upchurch alleges that Sheriff Fath and District Attorney Moustakis failed to provide his counsel with a recording or transcript of an interview that Deputy Sheriff Neff conducted with Upchurch. (Dkt. 1, Compl., ¶ 15.) Upchurch further alleges that during this timeframe Defendants Neff, Fath, and Moustakis otherwise made this transcript available to Timothy O'Brien. (*Id.*) These allegations are false. Mr. O'Brien requested a copy of Deputy Neff's December 2, 2012 recorded interview of Upchurch by making an open records request with the Sheriff's Department in late 2012 or early 2013. (O'Brien Aff., ¶ 8.) In response to his open records request, Mr. O'Brien received a copy of the recorded interview in early 2013. (*Id.*) There was nothing nefarious regarding the O'Briens written request for these documents.

Furthermore, Mr. O'Brien did not "use" the contents of this interview against Upchurch in the criminal prosecution, as alleged by Upchurch in the Complaint. (Dkt. 1, Compl., ¶ 15.) First, Mr. O'Brien was not a party to the criminal prosecution and was not in a position to "use" anything against Upchurch. Second, as set forth in pleadings filed by Upchurch's attorney on June 15, 2016, the circuit court made the decision to exclude several pieces of evidence, including the recording between Neff and Upchurch, in Vilas County Case No. 15CF61. (Luther Aff., ¶¶ 14-15, Exs. 11 and 12, Pleadings filed by Upchurch in his criminal case.) Therefore, nobody "used" these recordings against Upchurch. Rather, Upchurch sought to introduce the recordings as "crucial to the case" and the court excluded it. (*See id.*)

Upchurch alleges that in May 2016, Defendants Schneider and Lucareli visited the home of Upchurch's criminal defense attorney and that his attorney subsequently withdrew from his case

the next day. (Dkt. 1, Compl., ¶¶ 14-15.) Again, this is false. A transcript from the scheduled sentencing hearing in 2015CF0061 confirms that Upchurch fired his attorney the morning of his scheduled sentencing hearing on May 12, 2016. (Luther Aff., ¶ 10, Ex. 7, Tr. of May 12, 2016 Sentencing Hearing.) Glenna Davis, the Victim/Witness Coordinator for Vilas County, emailed the O'Briens on May 12, 2016, advising, "Upchurch is claiming he fired Penn this morning and wants to hire other attorneys…" (O'Brien Aff., ¶ 9, Ex. 7, Glenna Davis E-mail.) Thus, his attorney did not withdraw – Upchurch fired his attorney.

The O'Briens also filed for a restraining order against Upchurch on May 18, 2015. *See Margaret M. O'Brien v. Timothy J. Upchurch,* Vilas County Case No. 2015CV64 and *Timothy M. O'Brien v. Timothy J. Upchurch*, Vilas County Case No. 2015CV65. (Luther Aff., ¶ 11, Ex. 8, CCAP Reports.) The parties entered into a Stipulation and Agreement on June 4, 2015. (Luther Aff., ¶ 12, Ex. 9, Stipulation.) The Agreement provides Upchurch may not go within 200 yards of the O'Briens or any of the property that they own in Vilas County. (*See id*.) The parties subsequently entered into a renewed Stipulation and Agreement by which the court entered a harassment injunction in favor of the O'Briens. (*Id*. ¶ 13, Ex. 10, Stipulation.)

Deputy Patrick Schmidt's report dated May 15, 2015, details the O'Briens' complaints of harassment by Upchurch. (Luther Aff., ¶ 6, Ex. 3, Sheriff's Report No. 15-004675.) Deputy Schmidt made contact with Upchurch on May 15, 2015 and arrested him for stalking. (*Id.* at p. 5 of 8.) Notably, Deputy Schmidt's report details that after his arrest, Upchurch told the deputy that he was "taking orders from the tyrant" and "siding with child predators and ISIS." Deputy Schmidt described this as an "irrational rant." (*Id*. at p. 6 of 8.)

Deputy Schmidt obtained a search warrant to search the garage located at 1088 Berry Lane, which Upchurch did not own, but used. (*Id*.) Deputy Schmidt searched the garage on May 16,

2015. He located evidence that confirmed Upchurch was the individual who had placed a number

of signs on and around the Everett Resort over the last number of years. (*Id.*) This included a sign

stating, "A coward will die many times throughout his life. – J. Ceasar." (O'Brien Aff., ¶ 11, Ex,

8, Sign.) Other signs located in the garage included two orange signs with black spray painted

lettering stating "a sociopath area" and "caution sociopath ahead." Deputy Schmidt concluded that,

"**after getting all of the information, seizing all of the evidence and putting things all together,**

**it is very apparent that there is a well-defined pattern and history of stalking being done by**

**Timothy Upchurch, toward Tim and Peg O'Brien**." (*Id*. at p. 7 of 8.) (Emphasis added)

## LEGAL STANDARD FOR MOTION FOR SANCTIONS

Rule 11 of the Federal Rules of Civil Procedure provides that where an attorney or a party

files pleadings that are not reasonably based on the law or fact, or are meant to harass, sanctions

are appropriate for expenses incurred, including attorneys' fees. "Rule 11 authorizes a district court

to impose sanctions on lawyers or parties (or both) for submissions that are filed for an improper

purpose or without a reasonable investigation into the facts and law necessary to support their

claims. *See* Fed. R. Civ. P. 11(b)." *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819,

823 (7th Cir. 2001).

Rule 11 does not require that the Court find a party acted in "bad faith" before awarding

sanctions. Rather, the court must "undertake an objective inquiry into whether the party or his

counsel 'should have known that his position is groundless.'" *Chicago Newspaper Publishers'*

*Ass'n v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir.1987)

(citations omitted). "In deciding whether to impose sanctions, the district court must make an

objective determination as to whether the party's conduct was reasonable under the

circumstances." *Boese v. Milwaukee Cnty*., 801 F. Supp. 220, 224 (E.D. Wis. 1992).

The Seventh Circuit has adopted a two-step analysis to evaluate the propriety of imposing sanctions under Rule 11. *See Brown v. Federation of State Medical Bds. of the United States,* 830 F.2d 1429, 1434 (7th Cir. 1987). In *Brown*, the Court recommended that the district courts: (1) specify their reasons for finding that a party's conduct is sanctionable; and (2) fashion a sanction which appropriately serves the purposes underlying Rule 11, including details as to how monetary sanctions are computed." *Pfeifer v. Valukas*, 117 F.R.D. 420, 422-23 (N.D. Ill. 1987).

Rule 11 provides two grounds for sanctions. The first ground concerns frivolous litigation. *Brown*, 830 at 1435. For purposes of Rule 11, litigation is deemed "frivolous" where a party or his attorney fails to make a reasonable inquiry into the facts or the law. *Id.* Failure to make either inquiry  - into the facts or law - gives rise to a violation of Rule 11 under the "frivolousness" clause. *Id.* The second ground, generally coined the "improper purpose clause," encompasses litigation brought for purposes of harassment or delay. *Id.* at 1436; *See also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831-32 (9th Cir. 1986).

If, after notice and a reasonable opportunity to respond, the court determines that a party and/or the party's attorney has violated Rule 11(b), the court may impose sanctions upon the attorneys, law firms, and/or parties responsible for the violation.  Fed. R. Civ. P. 11(c)(1). A sanction for violating Rule 11(b) "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and includes monetary sanctions.  Fed. R. Civ. P. 11(4). District courts have broad discretion in imposing sanctions and will be overturned only upon an abuse of discretion.  *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 729 F.2d 469, 472 (7th Cir. 1984).

## ARGUMENT

**I.     The O'Briens are Entitled to Sanctions Against Upchurch and his Counsel for the Filing of a Frivolous Complaint.**

Upchurch alleges that between 1985 (when the O'Briens purchased the Everett Resort) and 2018 (when they sold the resort), Timothy O'Brien began "an associated-in-fact enterprise" (which Upchurch names the "O'Brien Enterprise") to deny him his "legal right" to access Catfish Lake by exercising his easement. (Dkt. 1, Compl., ¶ 17.) He alleges that all Defendants were associated in fact with the "O'Brien Enterprise" and participated in its conduct and operation. (*Id*. ¶18.)

In order to show a "pattern of racketeering," Upchurch alleges that Timothy O'Brien committed acts of extortion in violation of Wis. Stat. § 943.30(1) by preventing Upchurch from exercising his easement and by influencing District Attorney Moustakis to pursue criminal prosecutions against him. He further alleges that all Defendants committed "acts of obstruction of justice" indictable under 18 U.S.C. § 1503. He claims this has resulted in "injury to plaintiff Upchurch's property," specifically legal fees because of his corrupt criminal prosecution. (*Id.* ¶ 21.)

As set forth below, Upchurch's claims are not warranted in existing law and are not factually supported. The Complaint is riddled with factual inaccuracies. The facts Upchurch does allege do not support a RICO claim against the O'Briens. Upchurch and his counsel knew or should have known that all of the claims asserted against the O'Briens in this case lack any basis in law or fact. That should have been evident after the O'Briens served Upchurch with a copy of their Safe Harbor Letter and their Motion for Sanctions. Yet, Upchurch has continued to pursue baseless claims against the O'Briens. Rule 11 subjects a party to potential sanctions if the party continues to insist upon a position or argument after it is "no longer tenable." *In re Meier*, 223 F.R.D. 514, 519 (W.D. Wis. Sep. 29, 2004) (citing Fed. R. Civ. P. 11, 1993 Amendment Advisory Committees Note.) Therefore, this Court should award the O'Briens sanctions against Upchurch and his counsel.

**A.    Plaintiff's Claims Against the O'Briens are Not Warranted by Law.**

Upchurch cannot support his RICO claim against the O'Briens or, frankly, any of the Defendants. To begin, a civil RICO cause of action under § 1964(c) "requires a plaintiff to plead (1) an injury in its business or property (2) by reason of (3) the defendants' violation of section 1962." *Adamski v. McGinnis*, 2015 WL 1467818, at *2 (E.D. Wis. Mar. 30, 2015) (citing *DeGuelle v. Camilli,* 664 F.3d 192, 198 (7th Cir. 2011)).

RICO makes it unlawful for a person associated with any "enterprise" to engage in conduct of the enterprise's affairs or activities, which *affect interstate or foreign commerce* through a pattern of "racketeering activity." *See* 18 U.S.C. § 1962(c). RICO also makes it unlawful for a person to conspire to violate 18 U.S.C. § 1962(c). *See* 18 U.S.C. § 1962(d). An "enterprise" is an association or group of individuals associated in fact, even if not a legal entity. *See* 18 U.S.C. § 1961(4).

"Racketeering activity" includes any act or threat of extortion which is chargeable under state law and is punishable by imprisonment for more than one year. *See* 18 U.S.C. § 1961(1)(A). "Racketeering activity" also includes any action which is indictable under 18 U.S.C. § 1503. *See* 18 U.S.C. § 1961(1)(B). Section 1503 prohibits endeavoring to influence, intimidate, or impede, or injuring any grand or petit juror, or any officer in any "court of the United States" or any proceeding before "any United States magistrate judge." A "pattern of racketeering activity" requires "at least two acts of racketeering activity." *See* 18. U.S.C. § 1951(5). Criminal penalties are prescribed for violations of RICO. *See* 18 U.S.C. § 1963. Civil remedies also are provided for person injured by violations of RICO. *See* 18 U.S.C. § 1964. In this case, existing law does not warrant Upchurch's RICO complaint. This is true for multiple reasons.

First, Upchurch does not have standing to bring this claim. "The standing inquiry often revolves around whether the plaintiff is alleging direct harm to his or her business or property, or alleging harm – and thus a cause of action – that belongs to another." *Adamski,* 2015 WL 1467818, at *3. In the Complaint, Upchurch alleges injury to his "property." (Dkt. 1, Compl., ¶ 21.) Upchurch does not identify what property was injured. To the extent Upchurch claims damages to a real property interest, Upchurch himself did not suffer any harm to real property arising out of any alleged "enterprise" to keep him from using his alleged easement rights. This is because he never held title to real property with easement rights. (Luther Aff., ¶ 5, Ex. 2, Title Search.)

Second, even if Upchurch had standing to pursue this RICO action, his claims would nonetheless be barred by *Heck v. Humphrey*. 512 U.S. 477, 487 (1994). Upchurch alleges that his criminal prosecution was corrupt, and as a result, he suffered out of pocket losses in the form of $25,000.00 in legal fees. (Dkt. 1, Compl., ¶ 21.) In *Adamski*, the Eastern District of Wisconsin held, "It cannot seriously be argued that if the Court were to find police and judicial collusion, corresponding predicate RICO acts, and harm to the plaintiff as a result of those acts, that such an outcome would not necessarily call [Plaintiff's] underlying conviction into question." 2015 WL 1467818, at *4. Similarly, if Upchurch's RICO allegations were substantiated, his criminal convictions would need to be revisited. See *Adamski*, 2015 WL 1467818, at *4. "[W]hat *Heck* teaches is that collateral attacks on aspects of a criminal case that would imply the unlawfulness of the conviction itself, cannot proceed 'unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'" *Id*. (citing *Heck*, 512 U.S. at 487). Therefore, Upchurch's RICO claim may not proceed, as it is barred by *Heck v. Humphrey*.

Third, insofar as his claim of "racketeering activity" is premised upon 18 U.S.C. 1503, he fails to allege any unlawful influence or injury to any juror or officer in a federal court or before a

federal magistrate. Upchurch alleges that "all the named defendants committed acts of obstruction of justice indictable under 18 U.S.C. § 1503 as described … in ¶¶ 12-16 [of the Complaint]." Section 1503 forbids tampering with or retaliating against any grand or petit juror, or any officer in or of any court of the United States by threats or force or by "endeavors to influence, intimidate, or impede." None of the allegations in ¶¶ 12-16 of the Complaint identifies any actions implicating the civil or criminal courts of the United States or identifies any actions that might be indictable under Section 1503. To be indictable under Section 1503, the acts alleged must involve the federal courts or federal administration of justice. The Complaint alleges only proceedings that occurred in the civil or criminal courts of the State of Wisconsin. Thus, there is no basis for this allegation in the Complaint.

Fourth, Upchurch fails to allege any prohibited conduct because he does not allege the O'Briens engaged in conduct of the alleged enterprise's affairs or activities that *affect interstate or foreign commerce*. *See* 18 U.S.C. § 1962(c). Upchurch claims the alleged "O'Brien Enterprise" affected interstate commerce simply because the O'Briens owned the Everett Resort. (Dkt. 1, Compl., ¶19.) This allegation does not create the sufficient nexus to interstate commerce required for a RICO claim to exist. 18 U.S.C.A. § 1962(a) to (c); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989). A RICO enterprise is involved in "interstate commerce" when it is itself "directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce." *United States v. Garcia*, 143 F. Supp. 2d 791, 806 (E.D. Mich. 2000) (quoting *United States v. Robertson*, 514 U.S. 669, 672 (1995)).

The conduct that Upchurch *alleges* as constituting the "O'Brien enterprise" consists of placing physical barriers on the O'Briens' property, putting up surveillance cameras on their property, and writing letters to neighbors. (Dkt. 1, Compl., ¶ 12.) From there, Upchurch *alleges* that Timothy O'Brien expanded his campaign by influencing local law enforcement to prosecute Upchurch. (Dkt. 1, Compl., ¶ 13.) None of these activities could arguably be construed as involving

the distribution or acquisition of goods or services in interstate commerce. What Upchurch describes amounts to a squabble (of increasing tension and severity) between neighbors in Eagle River, Wisconsin, which are intrastate activities. Further, the criminal cases brought against Upchurch in state court are similarly intrastate activities, which do not involve interstate commerce. *See, e.g.*, *Rose v. Bartle*, 692 F. Supp. 521, 534 (E.D. Pa. 1988) (dismissing Section 1962(c) claim because plaintiff did not allege that the enterprises affected interstate commerce and the facts alleged showed that the enterprises were engaged only in intrastate activities), *aff'd in part, vacated in part, rev'd in part*, 871 F.2d 331 (3rd Cir. 1989).

Fifth, insofar as his claim of "racketeering activity" is premised upon Wis. Stat. § 943.30(1), Upchurch must show either (a) a malicious threat to accuse or a malicious accusation of a crime or offense, or (b) a threat or an injury to the person or property of a person "with intent to extort money or any pecuniary advantage" or "with intent to compel the person . . . to do any act against the person's will or omit to do any lawful act." He does not allege any threat or injury with intent to extort money or pecuniary advantage. Although he alleges that District Attorney Moustakis threatened to prosecute him and did prosecute him for crimes committed on Everett Resort property, such threat and prosecution cannot reasonably be considered "malicious" since Upchurch entered no contest pleas in both criminal actions. (Luther Aff., ¶ 8, Ex. 5, CCAP Report for Case No. 13CM174; ¶ 9, Ex. 6, CCAP Report for Case No. 15CF61.) Finally, while he apparently alleges that he was compelled to omit doing a "lawful act" (exercising his easement to cross Everett Resort), that presupposes a lawful easement that permits him to cross the Everett Resort. However, he does not claim that any court has ever declared that his alleged easement rights were "lawful," even though a Wisconsin circuit advised Upchurch more than five years ago

that he could not use his easement until a court declared his rights. *See State of Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2013CM0174.

Finally, the Complaint lacks the factual detail and argument required to show that Upchurch has a plausible claim under RICO, *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797 (7th Cir. 2008). "The Seventh Circuit has also warned against allowing RICO cases to proceed on the basis of cobbled together facts and weakly supported allegations." *Adamski v. McGinnis,* 2015 WL 1467818, at *5 (E.D. Wis. Mar. 30, 2015) (citing *Limestone*, 520 F.4d at 803.) The Complaint alleges only a formulaic recitation of the elements of a cause of action which is insufficient under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Just as the antitrust complaint in *Twombly* failed to contain sufficient allegations to make its claims plausible, Upchurch's RICO Complaint similarly fails to rise to the level of plausibility.

### B.    Plaintiff's Claims Against the O'Briens Lack Evidentiary Support.

Plaintiff's Complaint is utterly lacking in evidentiary support. In fact, the Complaint contains a number of factual inaccuracies. These inaccuracies should have been apparent to Plaintiff's counsel had he completed a reasonable investigation into the veracity of his client's claims or the viability of the RICO claim before filing this lawsuit and forcing Defendants to defend against this frivolous action.

"'The party advancing a legal theory has the burden of conducting a reasonable investigation of its viability before forcing an opponent to defend the claim.' *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Health & Welfare Fund*, 25 F.3d 509, 517 (7th Cir. 1994). To determine whether petitioner's attorney made a reasonable inquiry into the specific facts of the case, a court must consider: (1) whether the signer

15

of the documents had sufficient time for investigation; (2) the extent to which the signer had to rely on another for the factual foundation underlying the pleading, motion, or other paper; (3) whether the case was accepted from another attorney; (4) the complexity of the facts and the signer's availability to do a sufficient pre-filing investigation; and (5) whether discovery would have been beneficial to the development of the underlying facts. *R. K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103-04 (7th Cir. 1987)." *In re Meier*, 223 F.R.D. at 518.

At the outset, the Complaint is premised on Upchurch's allegation in Paragraph 11 of the Complaint that he held a deed in his name with an easement granting him access to Catfish Lake across the Everett Resort property. (Dkt. 1, Compl., ¶ 11.) This allegation is patently false. Upchurch did not own (or 'have a deed') to any property in Vilas County, Wisconsin. Notably, Upchurch does not identify the real property he allegedly held a deed to during the time period alleged in the Complaint. He provides no reference to any recorded document, deed, easement, or otherwise to support his claim that he held an easement across the O'Brien's property, as described in Paragraph 11 of the Complaint.

In fact, Upchurch never owned a home or any property, at any time, on the Everett peninsula. A tract search of this real property confirms that Upchurch never held any ownership interest in the 1125 Cranberry Shores Road property. (Luther Aff., ¶ 5, Ex. 2, Title Search.) It appears Upchurch provided his counsel with erroneous information about his "possession of a deed" that "granted him" an easement to access Catfish Lake, which falsehood his attorney should have uncovered after conducting a reasonable investigation or, at the latest, after being apprised of the falsehood upon service of the O'Briens' Motion for Sanctions. Upchurch falsely swore to his possession of a deed containing an easement across the Everett Resort Property in the Complaint.

In his Complaint, Upchurch alleges that Sheriff Fath and District Attorney Moustakis failed to provide his counsel with a recording or transcript of an interview that Deputy Sheriff Neff conducted with Upchurch. (Dkt. 1, *Compl.*, ¶ 15.) Upchurch further alleges that during this timeframe Defendants Neff, Fath, and Moustakis otherwise made this transcript available to Timothy O'Brien. (*Id.*) These allegations are false.

Mr. O'Brien requested a copy of Deputy Neff's December 2, 2012 recorded interview of Upchurch by making an open records request with the Sheriff's Department in late 2012 or early 2013. (O'Brien Aff., ¶ 8.) In response to his open records request, Mr. O'Brien received a copy of the recorded interview in early 2013. (*Id.*) There was nothing nefarious regarding the O'Briens written request for these documents. Mr. O'Brien had every right to request these items.

Furthermore, Mr. O'Brien did not "use" the contents of this interview against Upchurch in the criminal prosecution, as alleged by Upchurch in the Complaint. (Dkt. 1, Compl., ¶ 15.) First, Mr. O'Brien was not a party to the criminal prosecution and was not in a position to "use" anything against Upchurch. Second, as set forth in pleadings filed by Upchurch's attorney on June 15, 2016, the circuit court made the decision to exclude several pieces of evidence, including the recording between Neff and Upchurch, in Vilas County Case No. 15CF61. (Luther Aff., ¶¶ 14-15, Exs. 11 and 12, Pleadings filed by Upchurch in his criminal case.) Therefore, nobody "used" these recordings against Upchurch. Rather, Upchurch sought to introduce the recordings as "crucial to the case" and the court excluded it. (*See id.*)

In Paragraphs 14-15 of the Complaint, Upchurch alleges that in May 2016, Defendants Schneider and Lucareli visited the home of Upchurch's criminal defense attorney and that his attorney subsequently withdrew from his case the next day. (Dkt. 1, Compl., ¶¶ 14-15.) Again, allegation is patently untrue. A transcript from the scheduled sentencing hearing in 2013CM0174

confirms that Upchurch fired his attorney the morning of his scheduled sentencing hearing, not that his attorney "withdrew" from representing Upchurch. (Luther Aff., ¶ 10, Ex. 7, Tr. of May 12, 2016 Sentencing Hearing.) Glenna Davis, the Victim/Witness Coordinator for Vilas County, emailed the O'Briens shortly after the sentencing hearing on May 12, 2016, advising, "Upchurch is claiming he fired Penn this morning and wants to hire other attorneys…" (O'Brien Aff., ¶ 9, Ex. 7, Glenna Davis E-mail.) Thus, his attorney did not withdraw – Upchurch fired his attorney.

Based on the foregoing, Upchurch and his counsel "should have known that his position is groundless." *Chicago Newspaper Publishers,* 821 F.2d at 397. Therefore, this Court should find Upchurch and his counsel's conduct unreasonable under the circumstances and impose sanctions. *See Boese,* 801 F. Supp. at 224.

## II.     Plaintiff's Claims Against the O'Briens are Intended Solely to Harass.

As this motion makes clear, this case is not about a landowner attempting to lawfully exercise his property rights to peacefully utilize an easement to a lake. If it was, Upchurch would have filed a declaratory action in state court in order to determine and enforce his alleged easement rights. He did not do so. Rather, this case is about an individual with a documented history of harassing, threatening, and unstable behavior who has made it his life's mission to terrorize the O'Briens and anyone else, law enforcement included, who crosses him. Upchurch continues to pursue his campaign of fear and intimidation against the O'Briens despite having no factual or legal basis to support his claims in this lawsuit. Upchurch's threatening statements in the attached letters to the O'Briens are illustrative of a clear vendetta against the O'Briens, personally. Therefore, this Court should sanction Upchurch and his counsel for filing a complaint intended solely to harass.

Below are excerpts from the written threats Upchurch has made against the O'Briens and their lawyer, Steve Lucareli, over the years:

"I will guarantee you that if you mess with me I will see to it and even finance the project of putting in a public beach, picnic tables, barbeque grills, etc. I just want to use the access at my leisure without the consent of sum bully – **asshole like yourself**…Thanks" (signed) Tim Upchurch (September 10, 2003)

"We will use it as we see fit you **fucking Douche Bag**." (January 31, 2012)

"…surrounding your **piece of shit property**…What a fool you are…I will be happy to deliver (this letter) you **cock sucker!** … **Dumb Ass**… Being on the National Register of Historic Places makes you open to the public … I'm going to have everything re-surveyed for free by a friend and bulldoze where needed … **you're fucked**…" (signed) Tim Upchurch (March 28, 2012)

"We will install nice little signs that mark Everett Estate Easements to avoid confusion. If you don't pick up your garbage I will leave it in your front yard & send you a bill for clean up." (signed) Tim Upchurch (April 22, 2012)

"**You are both cowardly little bitches and a disgrace (sic) to all of humanity! I hope this letter doesn't frighten you. Feelings of fear and paranoia are normal when dealing with the pathological mind**." (Letter to Steve Lucareli, the O'Briens' attorney, May 1, 2014)

"Good luck, Asshole." (Facsimile to Steve Lucareli, September 7, 2016)

(O'Brien Aff., ¶¶ 2-7, Exs. 1-6 (emphasis added)).

Upchurch's expletive ridden rhetoric and irrational claims and threats illustrate that he has a clear vendetta against the O'Briens.  He has been convicted of three criminal charges – theft, criminal damage to property, and disorderly conduct – all relating to actions against the O'Briens. Upchurch is subject to a restraining order prohibiting him from being within 200 yards of the O'Briens or any of the property that they own in Vilas County. He stipulated to a harassment injunction as well.

On May 20, 2013, (prior to the filing of the charges referenced above), Deputy Randy Schneider received a voicemail message from an individual identifying himself as Timothy

Upchurch. (Luther Aff., ¶ 6, Ex. 3, Deputy Incident Report No. 15-04675.) Upchurch stated in the voicemail message that no one was going to prosecute him for criminal trespass or criminal damage to property. (*Id*.) He stated that the O'Briens are playing the Sheriff's Department for fools. (*Id*.) He went on to state law enforcement has not heard the last of him. (*Id***.) Upchurch stated he was going to keep going after the guy, referring to O'Brien.** (*Id*.)

In August of 2013, the Town of Washington Chairman, James Spring, reported to law enforcement that he was concerned by Upchurch's comments to him. (Luther Aff. ¶17, Ex. 14, Deputy Report for Incident 13-004395.)  Most notably, Upchurch stated to Mr. Spring that he would "**get him**," referring to Tim O'Brien. *Id*. Mr. Spring described **Upchurch as "fanatical**." *Id*. Based on the foregoing, it is clear Upchurch is pursuing this case against the O'Briens for no purpose other than to harass them and create needless litigation. *See* Fed. R. Civ. P. 11(b)(1).

In sum, the purpose of Rule 11 is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and "'to spare innocent parties and overburdened courts from the filing of frivolous lawsuits,'" *Cappa Fund III, L.L.C. v. Actherm Holding, A.S.*, 2011 WL 817384, at *2 (N.D. Tex. Feb. 21, 2011) (quoting *Kurkowski v. Volcker,* 819 F.2d 201, 204 (8th Cir. 1987)), *rec. adopted*, 2011 WL 816861 (N.D. Tex. Mar. 9, 2011). This lawsuit is a textbook example of the type of baseless lawsuit that Rule 11 is intended to address and deter.

### CONCLUSION

For the foregoing reasons, the O'Briens respectfully request that the Court enter an order pursuant to Rule 11 declaring that the Complaint filed by Upchurch against the O'Briens in the above-captioned matter lacks any basis in law or fact. The O'Briens further request that the Court award them costs and reasonable attorneys' fees they have incurred and will incur in defending this lawsuit, including the filing of the instant motion, as a sanction against Upchurch and his

attorney for filing and maintaining a frivolous Complaint, along with any other sanctions the Court

deems just and proper.

      Dated this 30th day of May, 2019.

                                 AXLEY BRYNELSON, LLP

                                 *s/ Jennifer M. Luther*
                                 Lori M. Lubinsky (State Bar No. 1027575)
                                 Jennifer M. Luther (State Bar No. 1065234)
                                 Attorneys for Defendants Timothy M. O'Brien and
                                 Margaret M. O'Brien
                                 P.O. Box 1767
                                 Madison, WI 53701-1767
                                 Telephone: (608) 257-5661
                                 Fax: (608) 257-5444
                                 Email: llubinsky@axley.com
                                              jluther@axley.com