UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

TIMOTHY J. UPCHURCH,

    Plaintiff,

v.

TIMOTHY M. O'BRIEN,
MARGARET M. O'BRIEN,
ALBERT D. MOUSTAKIS,
STEVEN M. LUCARELLI,
SHERIFF JOSEPH FATH,
DEPUTY SHERIFF ERIC NEFF,
and
DEPUTY SHERIFF RANDALL SCHNEIDER,

    Defendants.

Case No. 3:19-cv-00165

## DEFENDANTS TIMOTHY AND MARGARET O'BRIENS' REPLY BRIEF IN SUPPORT OF RULE 11 MOTION FOR SANCTIONS

### INTRODUCTION

Upchurch has the audacity to tell this Court that this case is about a "powerful corporation imposing its will on ordinary folks." (Dkt. 48, Br. in Opp. to Mot. for Sanctions, p. 5.) This is a complete and utter fallacy. The O'Briens have been the victims of Upchurch's reign of terror for years. As set forth in their principal brief, the O'Briens were the recipients of numerous expletive-ridden threats by Upchurch. Notably, Upchurch does not refute making any of the statements to the O'Briens and their lawyer, as outlined in the O'Briens' principal brief in support of this Motion for Sanctions. Further, the O'Briens were the victims of Upchurch's crimes, to which Upchurch pled guilty in a court of law. Upchurch forced the O'Briens to obtain restraining orders against him, to which Upchurch stipulated to stay off the O'Briens' property.

Despite Upchurch's well-documented history of criminal behavior (including Felony Stalking charges) and harassment directed toward the O'Briens and others in his community, Upchurch was somehow able to find an attorney willing to support him in his continued campaign of harassment against the O'Briens, as well as the other Defendants in this action. The fact that Upchurch was able to retain an attorney willing to represent him and maintain his utterly frivolous claims against the Defendants is the most troubling aspect of this entire case. For these reasons, and the reasons set forth below, the O'Briens respectfully request that this Court award the O'Briens sanctions against Upchurch and Attorney Provis for filing and maintaining a frivolous lawsuit intended solely to harass the O'Briens.

## ARGUMENT

Upchurch and his counsel may not be required to know "all the facts" before filing a complaint, but he and his attorney are certainly required to conduct a reasonable investigation into the facts and law behind their intended causes of action before filing a lawsuit in federal court. Fed. R. Civ. P. 11(b). Upchurch and his counsel did not conduct a reasonable investigation before filing this suit. The Declaration of Attorney Provis, which states that he purchased and reviewed treatises before filing this lawsuit does not save him from the penalty of sanctions. *Beeman v. Fiester*, 852 F.2d 206, 212 (7th Cir. 1988). "Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions." *Id.* (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)). The outcome of the *Beeman* case is distinguishable from the instant case. In *Beeman*, the plaintiff's attorney spent 40 hours investigating the case before filing. *Id.* Further, attorneys at the law firm of Schiff, Hardin & Waite, who specialize in RICO lawsuits, reviewed the complaint before filing and concluded that the alleged facts supported the view of law asserted in the complaint. *Id.* There was no similar due diligence in this case.

Upchurch and his counsel exhibit a lack of respect for this Court and the parties and their respective counsel in this case by casting this motion as a "waste" of time. (Dkt. 48, Br. in Opp. to Mot. for Sanctions, p. 5.) Rule 11 exists for a reason and the O'Briens are free to exercise their rights under that rule. Our federal courts are tasked with the burden of processing an overwhelming volume of cases each year. Furthermore, parties advancing legal theories must conduct a reasonable investigation into the viability of those claims before forcing an opponent to expend time and resources defending those claims. *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Health & Welfare Fund*, 25 F.3d 509, 517 (7th Cir. 1994).

Unfortunately, Upchurch and his counsel did not heed the O'Briens' warnings in their Safe Harbor Letter. Rather, Upchurch and his counsel have double downed and continue to maintain this frivolous lawsuit contrary to Rule 11. Upchurch's response in opposition to the O'Briens' Motion for Sanctions does nothing to bolster the veracity or merits of the Complaint. Upchurch's "arguments" are addressed in turn below. However, at the outset, it is important to highlight for this Court that Upchurch and his counsel simply ignore many of the properly supported facts laid out in the O'Briens' Motion for Sanctions and supporting affidavits. Presumably, this is because Upchurch cannot refute those facts. Further, the only responses Upchurch does offer amount to mere hyperbole at best and demonstrable falsehoods at worst. Most notably, the Declaration of Timothy Provis is riddled with hearsay that this Court should simply ignore. *See e.g., Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998). The O'Briens have given plausible reasons for dismissing the Complaint and Upchurch has not properly refuted those reasons. Therefore, he has forfeited his RICO claim. *U.S. ex rel. Miller v. SSM Health Care Corp.,* 2014 WL 2801234, at *5 (W.D. Wis. June 19, 2014).

**1. Upchurch Does Not Have Standing to Bring This RICO Action.**

Upchurch does not have standing to bring this RICO action. As set forth in the O'Briens' principal brief, "[t]he standing inquiry often revolves around whether the plaintiff is alleging direct harm to his or her business or property, or alleging harm – and thus a cause of action – that belongs to another." *Adamski v. McGinnis*, 2015 WL 1467818, at *3 (E.D. Wis. Mar. 30, 2015); *see also Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006). Upchurch concedes that he was never the titleholder of the real property for which he is claiming easement rights. He simply believes that he should be able to piggyback his claim off his wife's family trust's property. Upchurch cites no authority or admissible evidence to support this proposition. Upchurch did not submit any recorded public document evidencing his purported easement rights over the O'Briens' former property. Rather, he relies on several hearsay statements concerning his wife's purported role in the Weiland family trust. Statements not based on Attorney Provis's own personal knowledge are inadmissible and this Court should simply ignore such statements. *See e.g., Adusumilli v. City of Chi.*, 164 F.3d 353, 359 (7th Cir. 1998).

Regardless, Upchurch did not suffer any injury to *his* real property arising out of the alleged "enterprise." Whatever Upchurch and his wife were entitled to do as tenants on the property vis-à-vis the owner of the property, the Weiland family trust, has nothing to do with Upchurch's legal standing to bring this lawsuit. The standing inquiry in a RICO suit is simple. The plaintiff must allege direct harm to his or her property, not harm to property that belongs to another. Upchurch has alleged the latter, and therefore, his RICO claim lacks standing. A simple tract search of the ownership records for the subject property should have revealed this fact to Upchurch's counsel. Clearly, counsel did not do so before filing suit.

Upchurch cannot seek legal fees incurred in defending himself in criminal proceedings in which convictions were rendered against him as damages in this RICO case. *Ocean Energy*, out of the Fifth Circuit, relied upon by Upchurch to argue that he can claim attorneys' fees as damages is distinguishable. In *Ocean Energy*, the plaintiff sought attorneys' fees, indemnity payments, and other litigation costs incurred in defending claims brought by accident victims. 868 F.3d 740, 746 (1989). This is distinguishable from legal fees incurred defending against criminal charges, which is what Upchurch seeks as damages in this case.

In contrast, not only is *Evans v. City of Chicago* out of the Seventh Circuit, the controlling precedent in this case, it is clearly more analogous in that it dealt with legal fees incurred in defending against criminal charges, and not damages paid out in civil disputes. 434 F.3d 916 (7th Cir. 2006). Simply put, *Evans* definitively holds that attorney's fees incurred in defending oneself in a criminal action do not constitute an injury to one's "business and property." *Id.* at 925. Therefore, Upchurch does not satisfy the standing requirements to bring a RICO action.

### 2. Upchurch's RICO Action is Barred by *Heck v. Humphrey*.

Upchurch's RICO action is unequivocally barred by *Heck v. Humphrey*. 512 U.S. 477, 487 (1994). Upchurch's response to the O'Briens' *Heck* defense suggests a lack of understanding of the *Heck* rule by his counsel. Upchurch oddly asserts that the O'Briens have "failed to state the proper test" to determine whether Upchurch's RICO claim is *Heck*-barred and the O'Briens rely on a factually distinguishable case. Yet, Upchurch takes no steps whatsoever to explain to this Court how the O'Briens have failed to state the proper test or how *Adamski* is "factually distinguishable."

Upchurch simply goes on to cite *Copus v. City of Edgerton's* reference to *Heck v. Humphrey*, which sets forth the same well-settled *Heck* rule with slightly different verbiage.

Presumably, all parties can agree that there is no clearer recitation of the *Heck* defense than citing to *Heck* itself. A review of *Heck* itself makes clear that Upchurch's claim is barred. *Heck* states that, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence…" 512 U.S. at 487.

Simply citing to cases that discuss the *Heck* doctrine, without providing any discussion or analysis whatsoever as to why the case law relied upon is analogous to this case (e.g., Upchurch's reference in passing to *Cf. Simpson v. Rowan*, 73 F.3d 134 (7th Cir. 1995)), is not helpful to this Court and does not support Upchurch's position. For example, in the *Rowan* case, the plaintiff was convicted for felony murder. *Id*. at 135. The plaintiff sued several police officers and an assistant state's attorney and alleged a whole host of causes of action. *Id*. The court determined that some of the plaintiff's constitutional claims would invalidate the plaintiff's conviction, which he had not yet successfully challenged and were *Heck*-barred. *Id*. at 136. Other claims would not necessarily invalidate the plaintiff's conviction and were not *Heck*-barred. *Id*.

Upchurch's discussion of *Brady* and allegedly withheld evidence is equally as confusing. Notably, Upchurch concludes this discussion by essentially acknowledging that the allegedly withheld evidence was eventually turned over and had no effect on his criminal case! However, this discussion has absolutely no bearing on whether Upchurch's RICO case is *Heck*-barred. Similarly, the fact that Upchurch's deadline to appeal has passed does not make his case any less *Heck*-barred.

The application of *Heck* to Upchurch's RICO claim is simple and straightforward. The premise of Upchurch's Complaint is that his criminal prosecution was corrupt, and as a result, he suffered out of pocket losses in the form of $25,000.00 in legal fees. (Dkt. 1, Compl., ¶ 21.) If Upchurch's RICO allegations were substantiated, his criminal convictions would need to be

revisited. See *Adamski*, 2015 WL 1467818, at *4. This is exactly what *Heck* disallows. *Adamski* provides an analogous and contemporary example of the Eastern District of Wisconsin analyzing a RICO complaint's viability under *Heck*.

### 3. Upchurch Concedes that His 18 U.S.C. § 1503 Allegation Does Not Form the Basis for a Racketeering Claim; Upchurch Has Not Pled Two Predicate Acts.

Upchurch quickly conceded that his 18 U.S.C. § 1503 allegation cannot be the basis for a racketeering claim in this case. Again, had Upchurch's counsel actually reviewed this statute before filing the Complaint, he would have determined that it was not applicable. 18 U.S.C. § 1961(5); *see also, Sedima, S.P.R.L v. IMREX Co, Inc.,* 473 U.S. 479, 496 n. 14, 528 (1985). Furthermore, while Upchurch concedes that his 18 U.S.C. § 1503 allegation is not a predicate act, Upchurch fails to recognize that once his predicate act falls away, he is left with only one *alleged* predicate act. A "pattern of racketeering activity" requires "at least two acts of racketeering activity." *See* 18. U.S.C. § 1951(5). Upchurch has not adequately pled the existence of the elements of a RICO claim and his Complaint has no basis in law.

### 4. Upchurch Fails to Allege that the Alleged "Enterprise's" Affairs Affected Interstate Commerce.

Upchurch fails to allege any prohibited conduct because he does not allege the O'Briens engaged in conduct of the alleged enterprise's affairs or activities that *affect interstate or foreign commerce*. *See* 18 U.S.C. § 1962(c). Upchurch concedes that a RICO claim requires that the "activity of the Enterprise" have an effect on interstate commerce. (Dkt. 48, Br. in Opp. to Mot. for Sanctions, p. 3.) Yet, he fails to allege a nexus between the alleged enterprise and the activities he claims constitute interstate commerce.

The cases relied upon by Upchurch are readily distinguishable on this point. For example, in *U.S. v. Muskovsky*, the court held that the defendants' use of the telephone sufficiently affected

interstate commerce. 863 F.2d 1319 (7th Cir. 1988). However, that was because the defendants were using the interstate phone system to get approval for credit card transactions. The credit card transactions were a part of the alleged enterprise intended to take all of the customer's money. Similarly, in *U.S. v. Robertson*, 514 U.S. 669, 670-72 (1995), the RICO action stemmed from the defendant's investment in a certain gold mine. In looking at the interstate commerce requirement, the court looked at the defendant's purchase of supplies and hiring of employees from out of state.

In contrast, the fact that Upchurch argues, without any factual basis, that the O'Briens undoubtedly ordered supplies for the resort from out of state has absolutely nothing to do with the affairs of the alleged enterprise in this case. Again, Upchurch alleges that the "O'Brien enterprise" started as placing physical barriers on the O'Briens' property, putting up surveillance cameras on their property, and writing letters to neighbors, and expanded to Mr. O'Brien influencing local law enforcement to prosecute Upchurch. (Dkt. 1, Compl., ¶¶ 12-13.) This allegation does not create the sufficient nexus to interstate commerce required for a RICO claim to exist. 18 U.S.C.A. § 1962(a) to (c); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989).

    **5.**    **Upchurch's Wis. Stat. § 943.03(1) Claim Cannot Form the Basis for Racketeering; and Therefore, Upchurch Has Not Pled Two Predicate Acts.**

Upchurch fails to fully address this argument. In short, the O'Briens' principal brief stated that racketeering based on Wis. Stat. § 943.30(1) required that Upchurch show (a) a malicious threat to accurse or malicious accusation of a crime, or (b) a threat or an injury to person or property with the intent to extort money. Upchurch does not allege any threat or injury with intent to extort money or pecuniary advantage. Upchurch's allegation that District Attorney Moustakis threatened to prosecute him and did prosecute him for crimes committed on Everett Resort property cannot reasonably be considered "malicious" because Upchurch entered no contest pleas in both criminal

actions. (Luther Aff., ¶ 8, Ex. 5, CCAP Report for Case No. 13CM174; Luther Aff., ¶ 9, Ex. 6, CCAP Report for Case No. 15CF61.) Upchurch does not refute any of this in his response brief.

Alternatively, Upchurch alleges that he was compelled to omit doing a "lawful act" (exercising his alleged easement to cross Everett Resort). However, that presupposes a lawful easement that permits him to cross the Everett Resort. Upchurch does not claim that any court has ever declared that his alleged easement rights were "lawful." Upchurch simply argues that the O'Briens fail to cite authority holding that use of an easement first requires a declaration of its lawfulness. Upchurch's argument misses the mark. In fact, as set forth in the O'Briens' principal brief, **a Wisconsin circuit court advised Upchurch more than five years ago that he could not use his alleged easement until a court declared his rights**. *See State of Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2013CM0174. The simple point is that the Wisconsin circuit court ordered, on more than one occasion, that Upchurch was not to use his alleged easement until he obtained a declaration as to its validity. Notably, this relates back to the *Heck* and *Rooker-Feldman* defenses.

### 6. Plaintiff's Claims Against the O'Briens Lack Evidentiary Support.

Upchurch summarily dismisses the most glaring issue in this case. The Complaint alleges that Upchurch had an easement in "his deed." (Dkt. 1, Compl, ¶ 11.) Upchurch concedes in his response that this allegation was false. He acknowledges that he did not own a deed to the subject property. (Dkt. 48, Br. in Opp. to Mot. for Sanctions, p. 2.) Rather, the subject property was in his wife's family trust's name. (*Id*.) Attorney Provis now declares that the "deed under which Mr. Upchurch used the easement is in the name of the Weiland family trust." (Dkt. 49, Provis Declaration, ¶ 5.) Yet, the fact that the *verified* Complaint states that Upchurch had an easement "in his deed" evidences Plaintiff counsel's lack of investigation into the facts underlying this

lawsuit prior to commencing this action. It underscores that Upchurch provided his counsel with erroneous information, which should have been uncovered had his attorney exercised any reasonable diligence.

Regardless of which facts Upchurch's counsel knew regarding the ownership of the property at the time of the filing of the Complaint, Upchurch and his counsel fail to grasp the ramification of his lack of any legal ownership in the subject property. As set forth above, Upchurch *never* had any real property rights, and therefore, never suffered damage to property, as is required to bring a RICO action.

Upchurch also alleges that Sheriff Fath and District Attorney Moustakis failed to provide his counsel with a recording or transcript of an interview that Deputy Sheriff Neff conducted with Upchurch. (Dkt. 1, Compl., ¶ 15.) Upchurch further alleges that during this timeframe Defendants Neff, Fath and Moustakis otherwise made this transcript available to Mr. O'Brien. (*Id.*) These allegations are false. At the outset, a copy of Mr. O'Brien's open records request for this interview is attached to the Supplemental Affidavit of Jennifer M. Luther as Exhibit 1. That forecloses any factual issues raised by Upchurch on this issue. Based on Mr. O'Brien's open records request, it is clear that Upchurch's allegation that Defendants Neff, Fath and Moustakis "otherwise made this transcript available to Timothy O'Brien" is grossly misleading at best and utterly false at worst. Mr. O'Brien made this request as he had every right to do. He directed it to the "Records" department as any other individual making an open records request would do.

A simple review of the public records from Upchurch's criminal prosecutions clarify that Upchurch's allegations regarding the alleged withholding of this interview do not add up. The Complaint alleges, "during the time defendants Neff, Fath and Moustakis withheld the recording from plaintiff's counsel, they made it available to defendant Timothy M. O'Brien who used the

contents of the interview against plaintiff Upchurch in the criminal prosecution." (Dkt. 1, Compl., ¶ 15.) Thus, the thrust of Upchurch's argument is that this material was withheld from him yet used against him. The records from Upchurch's criminal proceeding reflect that the circuit court excluded the recording between Neff and Upchurch from evidence in Vilas County Case No. 15CF61. (Luther Aff., ¶¶ 14-15, Exs. 11 and 12, Pleadings filed by Upchurch in his criminal case.) Somehow, Upchurch is claiming that this recording was used against him, yet the record is clear that it was he who sought to introduce it as evidence "crucial to the case," and the court excluded it. (*See id.*) This argument is nonsensical. Perhaps this is why Upchurch completely ignores these facts in his response brief in opposition to this motion.

Furthermore, it is once again a gross mischaracterization of facts at best, and blatantly false at worst, for Upchurch to assert that Mr. O'Brien used this interview against him in the criminal prosecution. First, what Mr. O'Brien, as a victim of a crime, chooses to address in his victim impact statement, is separate and apart from what evidence the court allows the prosecution team (which did not include Mr. O'Brien) to introduce as evidence in the case. Second, as set forth above, Upchurch himself simultaneously sought to introduce this interview as evidence in his case and complains of its later reference during the sentencing phase.

In Paragraphs 14 to 15 of the Complaint, Upchurch alleges that in May 2016, Defendants Schneider and Lucareli visited the home of Upchurch's criminal defense attorney and that his attorney subsequently withdrew from his case the next day. (Dkt. 1, Compl., ¶¶ 14-15.) Again, this allegation is patently untrue. Upchurch makes no meaningful argument in his response brief to negate this fact.

Contrary to Upchurch's assertions, the O'Briens not only rely on an e-mail from the Victim Witness Coordinator, but from the **actual transcript of the sentencing hearing** 2013CM0174,

11

which confirms that Upchurch fired his attorney the morning of his scheduled sentencing hearing, not that his attorney "withdrew" from representing Upchurch. (Luther Aff., ¶ 10, Ex. 7, Tr. of May 12, 2016 Sentencing Hearing.) Upchurch and his counsel completely ignore the irrefutable evidence that proves his allegation that his attorney mysteriously withdrew is untrue. Upchurch fired his attorney. The transcript from his sentencing hearing confirms this.

Based on the foregoing, Upchurch and his counsel "should have known that his position is groundless." *Chicago Newspaper Publishers' Ass'n v. Chicago Web Printing Pressmen's Union No. 7*, 821 F.2d 390, 397 (7th Cir.1987). Therefore, this Court should find Upchurch and his counsel's conduct unreasonable under the circumstances and impose sanctions. *See Boese v. Milwaukee Cnty.*, 801 F. Supp. 220, 224 (E.D. Wis. 1992).

### 7. Plaintiff's Claims Against the O'Briens are Intended Solely to Harass.

Upchurch and his counsel seek to portray Upchurch as a peaceful, ordinary guy, just trying to enjoy his life as a local in tranquil Northern Wisconsin. (Dkt. 48, Br. in Opp. to Mot. for Sanctions, p. 5.) Upchurch seeks to contrast this portrayal of himself against the O'Briens, whom he describes as representing a "powerful corporation imposing its will on ordinary folks." (*Id.*) Upchurch's attempts at grandeur fall flat when viewed in light of the history between these parties. If anyone was "imposing [their] will" on another, it was Upchurch who sought to do so through his campaign of terror, stalking, and harassment. Notably, Upchurch does not refute the veracity of any of the materials or history set forth in Defendants' Motion for Sanctions and the Affidavit of Timothy O'Brien in Support of the Motion for Sanctions. Rather, Upchurch simply downplays his documented history of harassment of the O'Briens as a mere "foul mouth." (Dkt. 48, Br. in Opp. to Mot. for Sanctions, p. 5.) In actuality, what Upchurch's counsel describes as a mere "foul mouth" has resulted in multiple criminal convictions and restraining orders for Upchurch. His behavior is serious, disturbing, and dangerous. This Court and all parties to this action should

regard it as so. It should not be lost on the Court that Upchurch has stated, "**he was going to keep going after the guy**," referring to Mr. O'Brien, and that he would "**get him**." (Luther Aff., ¶ 6, Ex. 3, Deputy Incident Report No. 15-04675; Luther Aff., ¶17, Ex. 14, Deputy Report for Incident 13-004395.) Upchurch does not refute making any of the statements to the O'Briens, as outlined in this Motion.

Contrary to Upchurch's assertions, Rule 11 clearly provides <u>two</u> grounds for sanctions. The first ground concerns frivolous litigation. *Brown v. Federation of State Medical Bds. of the United States,* 830 F.2d 1429, 1435 (7th Cir. 1987). The second ground, generally coined the "improper purpose clause," encompasses litigation brought for purposes of harassment or delay. *Id.* at 1436; *see also Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831-32 (9th Cir. 1986).

Upchurch misconstrues the holding of *Zaldivar*, which considered whether a pleading, which is well-grounded in fact and in law as required by Rule 11, might ever be the subject of a sanction because it is filed for an improper purpose. *Zaldivar* noted that the "well grounded in fact and warranted by existing law" clause is connected with the "improper purpose" clause by the word "and," and that "by signing the pleading or other paper, the attorney certifies to both, thus suggesting that the two clauses are to be viewed independently." *Id.* at 832. However, for the purposes of deciding the case before it, *Zaldivar* held that its decision was limited to the facts of that case and it did not answer this question in the context of other cases*. Id.*

Ultimately, there is no question that both prongs of Rule 11 apply in the instant case. The Complaint is not warranted under existing law and is completely devoid of evidentiary support. Upchurch filed the Complaint simply as a means to abuse the court system toward his mission to exact vengeance against the O'Briens, as well as other Defendants named in this action.

## CONCLUSION

For the foregoing reasons, the O'Briens respectfully request that the Court enter an order pursuant to Rule 11, declaring that the Complaint filed by Upchurch against the O'Briens in the above-captioned matter lacks any basis in law or fact. The O'Briens further request that the Court award them costs and reasonable attorneys' fees they have incurred and will incur in defending this lawsuit, including the filing of the instant motion, as well as a sanction against Upchurch and his attorney for filing and maintaining a frivolous Complaint, along with any other sanctions the Court deems just and proper.

Dated this 12th day of July, 2019.

AXLEY BRYNELSON, LLP

*s/ Jennifer M. Luther*
Lori M. Lubinsky (State Bar No. 1027575)
Jennifer M. Luther (State Bar No. 1065234)
Attorneys for Defendants Timothy M. O'Brien and Margaret M. O'Brien
P.O. Box 1767
Madison, WI 53701-1767
Telephone: (608) 257-5661
Fax: (608) 257-5444
Email: llubinsky@axley.com
jluther@axley.com