IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TIMOTHY UPCHURCH,

                    Plaintiff,                    OPINION AND ORDER

    v.

                                              19-cv-165-wmc

TIMOTHY O'BRIEN, et al.,

                    Defendants.

Before the court are three motions for sanctions filed against plaintiff Timothy Upchurch and his attorney, Timothy Alan Provis. (Dkt. #36, 67, 75.) Although the case has been voluntarily dismissed on the merits, the court retains jurisdiction to consider these motions. The first sanctions motion was filed by defendants Timothy and Margaret O'Brien, who assert that plaintiff's claims were completely devoid of evidentiary support, not warranted under existing law, and brought for the purpose of harassment, all in violation of Rule 11 of the Federal Rules of Civil Procedure. (Dkt. #36.) The second motion was also brought by the O'Briens on the grounds that plaintiff failed to respond to written discovery requests or comply with the court's discovery order, both in violation of Federal Rule of Civil Procedure 37. (Dkt. #67.) The third motion was brought by defendant Steven Lucareli, who also asserts that Rule 11 sanctions are appropriate because the complaint was not well-grounded in fact and law, as well as filed for an improper purpose. (Dkt. #75.)[1]

This court does not issue sanctions lightly. However, it is abundantly clear that this particular case should never have seen the light of day. Moreover, given plaintiff

---

[1] Although this case was filed against seven defendants, only three have moved for sanctions. For ease, however, the court will generally refer to the three movants as the "defendants" throughout this opinion.

Upchurch's well-documented campaign of harassment against the O'Briens and others, the court finds that this lawsuit was brought for an improper purpose. Finally, the complaint contained various, obvious factual inaccuracies and was devoid of any reasonable basis in existing law. For these reasons, and others discussed more fully below, therefore, the court will impose sanctions on both plaintiff and his counsel.

BACKGROUND

**A. Parties and Procedural History**

At all times relevant to this lawsuit, plaintiff Timothy Upchurch resided next to the Everett Resort in Eagle River, Wisconsin. Plaintiff named the following individual defendants in his suit: Timothy and Margaret O'Brien, who owned the Everett Resort; Steven Lucareli, the O'Brien's attorney; Albert Moustakis, the Vilas County District Attorney; Joseph Fath, the Vilas County Sheriff; and Eric Neff and Randall Schneider, both Vilas County Deputy Sheriffs.

On February 28, 2019, Upchurch, by his attorney Timothy Alan Provis, filed this suit in federal court. (Dkt. #1.) Eventually, all defendants moved to dismiss plaintiff's complaint. (*See* dkts. #13, 19, 34, 40.) On May 30, 2019, the O'Brien defendants also filed a motion for sanctions under Rule 11 (dkt. #36), to which plaintiff and plaintiff's counsel responded (dkt. #48). Then, in response to the O'Briens' separate motion to compel disclosures and discovery (dkt. #62), the court issued a text order explaining that plaintiff had "no excuse for not providing the requested discovery in a racketeering lawsuit over an easement that they chose to file in federal court" (dkt. #66). Accordingly. the court granted the O'Briens' motion to compel and specifically stated that plaintiff had

2

"until January 14, 2020 to provide all of their Rule 26(a)(1) disclosures and all responses to the defendants' discovery requests."  (Dkt. #66.)

A few days after that January 14 deadline, the O'Brien defendants filed a motion for sanctions (or in the alternative, contempt) under Federal Rule of Civil Procedure 37, on the grounds that plaintiff had failed to comply with the court's earlier order.  (Dkt. #67.)  Rather than correct the discovery errors or substantively respond to this latest motion, plaintiff filed a notice of voluntary dismissal on January 23, 2020, of his claims against the O'Briens, the O'Briens' former attorney Steven Lucareli, and District Attorney Moustakis.  (Dkts. #70, 71.)  Finally, on January 27, 2020, defendant Lucareli filed a Rule 11 motion for sanctions, (dkt. #75), to which plaintiff and plaintiff's counsel also had the opportunity to respond (dkt. #80).

The day after Lucareli's motion, however, plaintiff filed a stipulation dismissing the remaining defendants, effectively ending the case, except for the pending motions for sanctions.  (Dkts. #77, 78.)

### B. Allegations in the Complaint

In his complaint, plaintiff Upchurch claims that defendants undertook a "campaign of harassment" to deny him rightful access to a lake via an easement in Eagle River, Wisconsin.  (Compl. (dkt. #1) ¶ 1.)  He further claims that defendants' actions amounted to a pattern of racketeering in violation of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

Specifically, Upchurch alleges that he had an easement in "his deed" granting him access to Catfish Lake across the Everett Resort property.  (*Id.* ¶ 11.)  After defendants

Timothy and Margaret O'Brien purchased the Everett Resort in 1985, Upchurch alleges that they then "began a campaign to deny the neighbors, including plaintiff Upchurch . . . access to Catfish Lake according to their easements." (*Id.* ¶ 1.)  This campaign allegedly included installing video cameras to surveil the easement, posting "no trespassing signs," physically blocking the easement, and writing letters to the neighbors threatening lawsuits and criminal prosecution.

Some twenty-seven years after the O'Briens' purchased the Everett Resort, in June of 2012, District Attorney Albert Moustakis, allegedly at the behest of Mr. O'Brien, "gathered several of the neighbors in his office and told them if they did not go to civil court with their problems using their easements, he would prosecute them for crimes." (*Id.* ¶ 13.)  Approximately three years after that, again allegedly at Mr. O'Brien's urging, Moustakis filed criminal charges against Upchurch in 2015.  During the course of this prosecution, Upchurch allegedly requested a transcript or recording of an interview Deputy Sheriff Eric Neff had conducted with him, but Neff and Deputy Sheriff Joseph Fath "repeatedly denied any such records existed."  Nevertheless, they allegedly later made the recording available to Mr. O'Brien, "who used the contents of the interview against plaintiff Upchurch in the criminal prosecution." (*Id.* ¶ 15.)  Plaintiff claimed that he only received the records from the Vilas County Sheriff's office some three or four years later, while Fath was on vacation.  Finally, plaintiff alleged that in May of 2016, Deputy Sheriff Randall Schneider and Mr. O'Brien's attorney, Steven Lucareli, visited the home of Upchurch's then-counsel, and that the day after their visit, his counsel withdrew from his case.

As a result of these actions, Upchurch ultimately claimed that these defendants formed an "associated-in-fact enterprise," with the purpose to "deny the Everett Resort's

4

neighbors, including plaintiff Upchurch, their legal right to use their easements to access Catfish Lake across the Everett Resort property." (*Id.* ¶ 17.)  Moreover, Upchurch claimed that defendants' "acts of obstruction of justice [are] indictable under 18 U.S.C. § 1503," and in particular, that Mr. O'Brien "committed acts of attempted extortion chargeable under § 943.30(1), Wis. Stats." (*Id.* ¶ 20.)  Upchurch concluded that defendants' acts "factually and proximately caused injury to plaintiff Upchurch's property," and "as a result of the corrupt criminal prosecution against him, plaintiff Upchurch sustained out of pocket losses of $25,000 for legal fees." (*Id.* ¶ 21.)

### C. Evidence Proffered by Defendants Regarding the Allegations Made by Plaintiff in his Complaint

In response to the allegations in plaintiff's complaint, and in support of their pending motions for sanctions, the O'Briens and Attorney Lucareli have produced evidence contradicting the already dubious allegations in plaintiff's complaint.  As an initial matter, the O'Briens' evidence establishes that Upchurch not only never had an easement in "his deed," (Compl. (dkt. #1) ¶ 11), he never had a deed.  Instead, while Upchurch *resided* at 1125 Cranberry Shores Road, Eagle River, Wisconsin, a title search shows that he was never an *owner* of this property.  In his reply, plaintiff admits that his name was not on the Cranberry Shores Road deed, although he goes on to explain that the deed was in the name of Upchurch's wife's family trust, and he was entitled by the trust to use the alleged easement in the deed.

Mr. O'Brien also testifies that Upchurch made the following statements in letters to them and their lawyer, Steven Lucareli, in the years before the present lawsuit:

"I will guarantee you that if you mess with me I will see to it

5

and even finance the project of putting in a public beach, picnic tables, barbeque grills, etc. I just want to use the access at my leisure without the consent of sum bully -- asshole like yourself . . . Thanks" [signed] Tim Upchurch [September 10, 2003]

"We will use it as we see fit you fucking Douche Bag." [January 31, 2012]

". . . surrounding your piece of shit property. . . .  What a fool you are. . . .  I will be happy to deliver (this letter) you cock sucker! . . .  Dumb Ass. . . .  Being on the National Register of Historic Places makes you open to the public . . . .  I'm going to have everything re-surveyed for free by a friend and bulldoze where needed . . . you're fucked." [signed] Tim Upchurch [March 28, 2012]

"We will install nice little signs that mark Everett Estate Easements to avoid confusion. If you don't pick up your garbage I will leave it in your front yard & send you a bill for clean up." [signed] Tim Upchurch [April 22, 2012]

"You are both cowardly little bitches and a discrace [sic] to all of humanity! I hope this letter doesn't frighten you. Feelings of fear and paranoia are normal when dealing with the pathological mind." Signed by "Guess who?" [Letter to Steve Lucareli, the O'Briens' attorney, May 1, 2014]

"Good luck, Asshole." [Facsimile to Steve Lucareli, September 7, 2016]

(O'Brien Decl., Ex. 1-6 (dkt. 39-1 through -8).)

The parties seem to agree on one thing:  the O'Briens' complaints about Upchurch's behavior to the Vilas County Sheriff's Department prompted Deputy Sheriff Randy Schneider to issue a warning letter to Upchurch on April 24, 2012.  (Luther Decl., Ex. 4 (dkt. #38-4.)  However, that letter explained Upchurch's actions "could be interpreted as 'stalking' as defined by WI State Statute 940.32, which is a felony" and cautioned him that "any future stalking behavior done by you . . . will result in arrest by law enforcement." (*Id.*)

6

Similarly, in May of 2013, the O'Briens contacted the Vilas County Sheriff's office regarding a theft of a trail camera on their property.  According to a report written by Deputy Schneider at the time, the O'Briens had set up two surveillance cameras on their property; and on May 6, 2013, the video footage from one of the cameras showed Upchurch with the other (stolen) camera in his hand and on the O'Briens' property. (Luther Decl., Ex. 1 (dkt. #38-1) (Sheriff's Report No. 13-004696).)  Shortly after this report was written, Deputy Schneider received a voicemail from an individual identifying himself as Upchurch and stating that:  no one was going to prosecute him; the O'Briens were playing the Sheriff's Department for fools; law enforcement had not heard the last of him; and he was going to keep going after "the guy" -- presumably, Mr. O'Brien.  (Luther Decl., Ex. 3 (dkt. #38-3) (Deputy Incident Report No. 15-04675).)

On May 30, 2013, District Attorney Moustakis filed a criminal complaint against Upchurch charging him with theft of movable property for the incidents described above. Then, on August 16, 2013, another sheriff's report was written regarding the trail camera incident, noting that James Spring had advised a deputy sheriff during an interview that: (1) Upchurch called Spring and told him that he had cut down a fence at the O'Briens' property with a chainsaw twice; (2) Spring saw that Mr. O'Brien had put up a camera to catch him cutting the fence, but that he "fixed his ass" by taking out the SD card; (3) Upchurch said he would "get him," referring to Mr. O'Brien.; and (4) Upchurch was "fanatical" about the easement issue.  (Luther Decl., Ex. 14 (dkt. #38-14) (Deputy Report Supplement No. 13-004395).)

Eventually, Upchurch entered a "no contest" plea to the criminal charges brought against him for theft of the trail camera, and on January 24, 2014, he was found guilty of

7

theft in state court.  *See Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2013CM0174.  The court further ordered that Upchurch was "not to use his easement until rights are declared by a court."  *Id.*  The O'Briens further represent (and plaintiff does not dispute) that there is no record of Upchurch ever filing a suit seeking a declaration of his property rights.

Next, on May 15, 2015, Deputy Schmidt arrested Upchurch for stalking.  (Luther Decl., Ex. 3 (dkt. #38-3) (Sheriff's Report No. 15-004675).)  The very next day, Deputy Schmidt obtained a warrant to search a garage used by Upchurch.  (*Id.*)  Based on that search, Deputy Schmidt concluded "after getting all of the information, seizing all of the evidence and putting things all together, it is very apparent that there is a well-defined pattern and history of stalking being done by Timothy Upchurch, toward Tim and Peg O'Brien."  (*Id.*)  Soon after, on May 19, District Attorney Moustakis filed another criminal complaint against Upchurch, charging him with felony stalking, possession of THC, and possession of drug paraphernalia in *Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2015CF0061.  (Luther Decl., Ex. 13 (dkt. #38-13).)  On April 14, 2016, Upchurch entered a plea of no contest and was found guilty of criminal damage to property and disorderly conduct.  *See Upchurch*, Vilas County Case No. 2015CF0061.  The court ordered that Upchurch have no contact with the O'Briens and not to go upon their premises.  *Id.*

As to the recording of an interview that Upchurch alleged Mr. O'Brien used against him in the 2015 criminal case, and that he claimed to have repeatedly requested but did not receive until years later (Compl. (dkt. #1) ¶ 15), the O'Briens again offer a more believable version of the facts.  First, they explain that Mr. O'Brien received a recording of the interview after making an open records request with the Sheriff's Department (*see*

O'Brien Decl. (dkt. #39) ¶ 8), and there "was nothing nefarious regarding the O'Briens['] written request for these documents." (Defs.' Br. (dkt. #37) 6.) Second, they rightly note that Mr. O'Brien was not a party to the criminal prosecution, and therefore, he was "not in a position to 'use' anything against Upchurch." (*Id.*) Third, the O'Briens explain that the recording of the interview was one of several pieces of evidence excluded by the circuit court in Upchurch's prosecution, meaning that in the end, "nobody 'used' these recordings against Upchurch." (*Id.*)

> In response, plaintiff's erstwhile counsel averred that he
>
> personally reviewed copies of letters provided to me by my client from his counsel to defendants Fath and Moustakis complaining about their failure to turn over the withheld record of defendant Neff's interview with Mr. Upchurch. I further have read and retain copies of responses to those letters by defendants Fath and Moustakis claiming the requested record did not exist.

(Provis Decl. (dkt. #49) ¶ 5(b).) Plaintiff's former counsel also averred that he "personally reviewed copies of the O'Briens['] victim statement in a criminal case against plaintiff which quotes from the Neff interview." (*Id.* ¶ 5(c).) He did not, however, attach copies of any of those documents for the court's review.

The O'Briens also call into question the factual basis for Upchurch's allegations in his complaint regarding Deputy Schneider and Attorney Lucarali visiting the home of Upchurch's counsel in May of 2016, which resulted in his attorney's withdrawal. (Compl. (dkt. #1) ¶¶ 14-15.) In particular, the O'Briens point to a portion of the transcript from Upchurch's criminal sentencing hearing indicating that Upchurch may actually have fired his attorney. (Luther Decl., Ex. 7 (dkt. #38-7) (Tr. of May 12, 2016 sentencing hearing) ("[The Court: I did receive correspondence from Mr. Penn.  It appears that Upchurch

wanted to fire his attorney.").)  Plaintiff produces no evidence to contradict this suggestion, arguing in his reply only that "what happened . . . between defense counsel and Mr. Upchurch . . . and whether counsel did withdraw in that period is not on any record.  Thus, . . . this issue is one of fact to be decided by a jury." (Pl.'s Opp'n (dkt. #48) 4.)  Even if this were so, a jury could only speculate as to what happened.  More importantly, what happened between Upchurch and his criminal counsel has little, if any, relevance to his claim in the case.

The O'Briens further explain that they filed for a restraining order against Upchurch in May of 2015.  *See Margaret M. O'Brien v. Timothy J. Upchurch,* Vilas County Case No. 2015CV64; *Timothy M. O'Brien v. Timothy J. Upchurch*, Vilas County Case No. 2015CV65.  The parties entered a stipulation and agreement in June of 2015, which states that Upchurch was not to go within 200 yards of the O'Briens or any of the property that they owned in Vilas County.  *Id.*

Finally, in January of 2017, Upchurch filed a complaint against Attorney Steven Lucareli and District Attorney Moustakis with the Wisconsin Office of Lawyer Regulations ("OLR").  (Loomis Decl., Ex. 7 (dkt. #76-7) 1-5.)  In this letter, he wrote in part:

> These individuals [referring to Lucareli and Moustakis] are an absolute menace to our society. . . .  Keep in mind we are dealing with the most extreme form of cowards. . . .  They should be prosecuted and sent to prison.

(*Id.* at 3-5.)  In another letter to the OLR, Upchurch wrote:

> I came across an interesting article on line making reference to Steve Lucareli.  I think it is worth looking at for anyone that works in your field, if you haven't see[n] it already.  It is called, "Dirty Rotten Prosecutor[,"] convoluted Brian.

(*Id.* at 2.)  In response, the OLR explained that his letters did "not indicate potential ethical

10

misconduct by Attorney Lucareli," and it closed the file relating to his grievance.  (Loomis Decl., Ex. 6 (dkt. #76-6) 2.)

### D. Plaintiff's Discovery Violations

As alluded to above, the O'Briens also submit evidence related to plaintiff's failure to comply with this court's December 31, 2019, order granting defendants' motion to compel discovery from plaintiff.  On January 17, 2020, the O'Briens then filed a motion for sanctions or, in the alternative, an order of contempt on the grounds that plaintiff had not complied with his ordered discovery responses within the court's January 14 deadline. (Dkt. #67.)  According to a declaration submitted by one of the O'Briens' attorneys, while plaintiff's counsel served some responses on January 14, the responses were deficient for a number of reasons.  Specifically, the O'Brien defendants represent that:

1) Plaintiff failed to identify any witness who plaintiff claimed support his refusal to admit, as requested by interrogatory No. 2.

2) Plaintiff's discovery responses were not signed under oath as required by Federal Rule of Civil Procedure 33(b)(3).

3) Plaintiff failed to respond to the O'Brien defendants' requests for production of documents, and failed to produce even a single document.

Plaintiff again did not respond directly to these contentions, but instead argues that now that the case is dismissed, the court has no jurisdiction to consider their motion.  (*See* Pl.'s Opp'n (dkt. #74) 1.)

### E. Safe Harbor Letters

A declaration submitted by one of the O'Briens' attorneys indicates that they served plaintiff's counsel with a Rule 11 "safe harbor" letter on May 6, 2019, enclosing a copy of

the sanctions motion they ultimately filed with this court.  (*See* Luther Decl., Ex. 15 (dkt. #38-15).)  Likewise, counsel for defendant Lucareli sent plaintiff a Rule 11 "safe harbor" letter on April 2, 2019.  (Loomis Decl., Ex. 1 (dkt. #76-1).)

OPINION

## I.  Jurisdiction

As an initial matter, the court will address plaintiff's argument that it no longer retains jurisdiction to consider the three sanctions motions because the larger case has now been dismissed.  (Pl.'s Opp'n (dkt. #74) 1.)  As a general matter, once a case is dismissed, it is "over and federal jurisdiction is terminated."  *Hill v. Baxter Healthcare Corp.*, 405 F.3d 572, 576 (7th Cir. 2005).  However, it is also "well established" that district courts retain jurisdiction to consider certain collateral issues -- such as Rule 11 sanctions, attorneys' fees, and contempt sanctions -- even after an action is no longer pending.  *See Cooter* & *Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990) (explaining that "a federal court may consider collateral issues after an action is no longer pending," including, for example "motions for costs or attorney's fees" or Rule 11 sanctions); *Ratliff v. Stewart*, 508 F.3d 225, 229–230 (5th Cir. 2007) ("Although the district court no longer had jurisdiction over the subject matter of the dispute, the collateral jurisdiction doctrine permits courts to sanction lawyers, even after a final judgment on the underlying merits.") (footnote omitted).  Thus, despite the dismissal of plaintiff's underlying claims, this court retains jurisdiction to consider defendants' three unresolved motions for sanctions.

## II.  Rule 37 Sanctions

The court will initially consider the O'Brien defendants' argument that Rule 37

sanctions should be imposed.  Federal Rule of Civil Procedure 37(b) grants a district court discretion to impose sanctions where a party or party's officer fails to obey an order to provide discovery.  "[A] motion to compel usually precedes the imposition of Rule 37(b) sanctions."  *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 472 (7th Cir. 1984). Rule 37 also authorizes the court to impose a variety of sanctions, including but not limited to dismissal of the action or finding the disobedient party in contempt.  Fed. R. Civ. P. 37(b)(2)(A).  The Rule further states that:

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).  As suggested by this plain language, the award of expenses is "mandatory, regardless of what other sanctions may be imposed, unless the delinquent party shows substantial justification for its failure or other circumstances making an award unjust."  Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2289 (3d ed.).

Here, the court finds that sanctions are warranted under Rule 37(b).  The court granted defendants' earlier motion to compel, and the court is convinced by defendants' unrebutted evidence that plaintiff failed to abide by its order.  As to the nature of the sanction to be imposed, the court finds that most of the relief requested by the O'Briens in their motion is now moot due to the dismissal of the action.  Given that plaintiff made no showing that his failure to comply with the court's order was substantially justified or offer any other excuse for his noncompliance (Pl.'s Opp'n (dkt. #74) 1-2), the court will also grant the O'Briens' request for attorneys' fees and costs associated with bringing their previous motion to compel (dkt. #62) and the related Rule 37 sanctions motion (dkt.

#67).  This sanction is assessed against plaintiff Upchurch and Attorney Provis jointly and severally.  *See Roadway Express v. Piper*, 447 U.S. 752, 763-64 (1980) ("Both parties and counsel may be held personally liable for expenses, including attorney's fees, caused by the failure to comply with discovery orders.  Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.") (internal quotations, alterations omitted); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 470 (7th Cir. 1984) (holding plaintiff and plaintiff's counsel jointly liable for $10,802.08 in reasonable expenses, including attorneys' fees, caused by discovery violation).  Not later than September 13, 2021, the O'Briens may submit an itemized bill of these expenses, and plaintiff may have 21 days to object to any of these expenses.

### III. Rule 11 Sanctions

The court next turns to the O'Briens' and Lucareli's motions for Rule 11 sanctions. (Dkts. # 36, 75.)  Rule 11(b) of the Federal Rules of Civil Procedure provides in relevant part that:

> By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
> (3) the factual contentions have evidentiary support or, if

> specifically so identified, will likely have evidentiary support
> after a reasonable opportunity for further investigation or
> discovery . . . .

Fed. R. Civ. P. 11(b). Rule 11 further provides that a court may, after notice and reasonable opportunity to respond, impose sanctions on an attorney or party who violates Rule 11(b). Fed. R. Civ. P. 11(c)(1); *see also Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 823 (7th Cir. 2001) ("Rule 11 authorizes a district court to impose sanctions on lawyers or parties (or both) for submissions that are filed for an improper purpose or without a reasonable investigation into the facts and law necessary to support their claims.") (citing Fed. R. Civ. P. 11(b)). In the discussion that follows, the court addresses: (1) whether the O'Briens and Lucareli provided plaintiff Upchurch and his attorney, Timothy Provis, with proper notice and the requisite safe harbor letter; (2) whether Upchurch and Provis engaged in sanctionable conduct; and (3) the nature of the sanctions to be imposed.

### A. Notice and Safe Harbor Letter

"Rule 11(c)(2) requires a party seeking Rule 11 sanctions first to serve a proposed motion on the opposing party and to give that party at least 21 days to withdraw or correct the offending matter. Only after that time has passed may the motion be filed with the court." *N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 881-82 (7th Cir. 2017). Here, both the O'Briens and Lucareli affirm that they served the requisite safe harbor letter on plaintiff's counsel more than 21 days before filing the present motions. (*See* Luther Decl. (dkt. #38) ¶ 18; Loomis Decl. (dkt. #76) ¶ 4.) Plaintiff does not dispute that these letters complied with the safe harbor provision or Rule 11. (*See generally* Pl.'s Opp'n (dkt.

#48); Pl.'s Opp'n (dkt. #80).)   Accordingly, the court finds that the safe harbor requirement has been met and that the two sanctions motions are properly before the court.

## B. Sanctionable Conduct

Rule 11 "requires that the district court undertake an objective inquiry into whether the party or his counsel 'should have known that [a] position is groundless.'" *Dist. No. 8, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Clearing, a Div. of U.S. Indus., Inc.*, 807 F.2d 618, 622 (7th Cir. 1986) (quoting *Coleman v. Comm'r*, 791 F.2d 68, 71 (7th Cir. 1986)).   The rule does not require a showing of bad faith.   *Id.*   Instead, the rule "is principally designed to prevent baseless filings." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002).

Here, both the O'Briens and Lucareli have presented fairly overwhelming and easily available evidence not only contradicting many of the factual allegations but wholly undermining the merits of plaintiff's claims in the complaint.   Indeed, the central claim of the complaint -- that defendants conspired to violate Upchurch's easement rights in "his deed" -- had no foundation, as Upchurch plainly never owned the deed in question.   In response to the sanctions motion, plaintiff's counsel acknowledged that he "investigated this issue," and he knew that the deed was in the name of the Weiland family trust and not in Upchurch's name; yet chose to make no disclosure of these material facts.   (Provis Decl. (dkt. #49) ¶ 5(a).)   Other publicly available information also calls into question the factual foundation of many of Upchurch's other allegations.   For example, a 2014 court order *prohibited* Upchurch from using his alleged easement rights until they were declared

by a court, not only directly contradicting plaintiff's allegations that he had a lawful right to access the O'Brien's land, but reinforcing the illegality of his repeated trespass on the property, not to mention sustained harassment.  Upchurch himself obviously had firsthand knowledge of the falsity of the contentions in the complaint, but Provis either knew *or should have known* that the contentions were false as a reasonable inquiry would have revealed the claims to be baseless.  *See Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (explaining that a frivolous contention, including one "that is baseless and made without a reasonable and competent inquiry," is subject to Rule 11 sanctions).  Accordingly, the court finds that both Upchurch and Attorney Provis violated Rule 11(b)(3) when they failed to reasonably certify that the factual contentions in the complaint had, or after reasonable opportunity for investigation were likely to have, evidentiary support.

Similarly, the complaint contains numerous, obvious legal flaws.  The complaint asserted violations of the Racketeer Influence and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, which makes it unlawful for a person associated with any "enterprise" to engage in conduct of the enterprise's affairs or activities which affect interstate or foreign commerce through a pattern of "racketeering activity."  *See* 18 U.S.C. § 1962(c). "Racketeering activity" includes any act or threat of extortion which is chargeable under state law and is punishable by imprisonment for more than one year.  *See* 18 U.S.C. § 1961(1)(A).  "Racketeering activity" also includes any action which is indictable under 18 U.S.C. § 1503.  *See* 18 U.S.C. § 1961(1)(B).

For numerous reasons, the complaint completely failed to state a RICO violation. For example, the complaint alleged simply that the "O'Brien enterprise affected interstate commerce due to defendant[] O'Brien's ownership of the Everett resort."  (Compl. (dkt.

17

#1) ¶ 19.)  But neither this conclusory statement nor any of the other allegations in the complaint come close to stating a plausible claim that the alleged enterprise was "directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce" as required to state a RICO violation.  *See United States v. Robertson*, 514 U.S. 669, 672 (1995).

Nor did the complaint come close to alleging racketeering activity, much less a *pattern* of such activity.  Specifically, plaintiff alleged racketeering activity based on defendants' "acts of obstruction of justice indictable under 18 U.S.C. § 1503" and Mr. O'Brien's "acts of attempted extortion chargeable under [Wis. Stat.] § 943.30(1)." (Compl. (dkt. #1) ¶ 20.)  Section 1503 prohibits endeavoring to influence, intimidate, or impede, or injuring any grand or petit juror, or any officer in any "court of the United States" or any proceeding before "any United States magistrate judge."  No such activity is expressly or impliedly alleged in plaintiff's complaint, a fact which plaintiff himself *conceded* in response to defendants' sanctions motion (*see* Pl.'s Opp'n (dkt. #48) 3), yet he still refused to amend his complaint to eliminate that claim.  Plaintiff's recognition of the baselessness of this claim, yet his persistence in making it, is grounds for sanctions by itself. *See In re Meier*, 223 F.R.D. 514, 519 (W.D. Wis. Sep. 29, 2004) (Rule 11 subjects a party to potential sanctions if the party continues to insist upon a position or argument after it is "no longer tenable").  As to Mr. O'Brien's alleged violation of Wis. Stat. § 943.30(1), such a violation requires certain threats to be made "with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against the person's will or omit to do any lawful act."  However, plaintiff failed to allege that Mr. O'Brien's alleged threats were made to extort money, gain

pecuniary advantage, or compel Upchurch to do something.

Despite the numerous legal problems that plagued the complaint, the court does not impose sanctions lightly, as a "misapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursing novel factual or legal theories,' contrary to the intent of its framers." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 529 (5th Cir. 2016) (internal citations and quotations omitted). Still, "[t]he party advancing a legal theory has the burden of conducting a reasonable investigation of its viability before forcing an opponent to defend the claim." *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Health & Welfare Fund*, 25 F.3d 509, 517 (7th Cir. 1994). Here, it is apparent that plaintiff failed to do so.

More fundamentally, the court is convinced this lawsuit was improperly brought to harass defendants in violation of Rule 11(b)(1). "A court must focus on objectively ascertainable circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay." *Deere & Co. v. Deutsche Lufthansa Aktiengesellschaft*, 855 F.2d 385, 393 (7th Cir. 1988) (quoting *National Ass'n of Gov't Emoloyees, Inc. v. National Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988)). Here, defendants have produced evidence regarding Upchurch's longstanding campaign of harassment against the O'Briens and others, most of which plaintiff does not even attempt to dispute. The record here shows that Upchurch sent numerous threatening and obscene letters to the O'Briens and their attorney Lucareli. (*See* O'Brien Decl., Ex. 1-6 (dkt. #39-1 through -8).) Upchurch was twice successfully prosecuted for his criminal behavior towards to the O'Briens and their property. *See Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2013CM0174; *Wisconsin v. Timothy Upchurch*, Vilas County Case No. 2015CF0061. Multiple sheriff's

reports also establish the obsessive and "fanatical" grudge Upchurch had against the O'Briens and related individuals.  (Luther Decl., Ex. 3 (dkt. #38-3) (Deputy Incident Report No. 15-04675); Ex. 14 (dkt. #38-14) (Deputy Report Supplement No. 13-004395).)

The court is also mindful of the fact that the O'Briens filed and received a restraining order against Upchurch.  *See Margaret M. O'Brien v. Timothy J. Upchurch,* Vilas County Case No. 2015CV64; *Timothy M. O'Brien v. Timothy J. Upchurch*, Vilas County Case No. 2015CV65.  Upchurch also filed baseless complaints against Attorney Lucareli and Vilas County District Attorney Moustakis with the Wisconsin OLR.  (Loomis Decl., Ex. 7 (dkt. #76-7) 1-5.)  Although Attorney Provis does not appear to have *personally* shared in Upchurch's desire to harass defendants, he either knew or should have known of Upchurch's improper motives as much of the harassing behavior is documented in the public record and would have been revealed had Provis undertaken a reasonable investigation into Upchurch's suspect claims.  In sum, the court finds that these objective circumstances show that the complaint was filed for an improper purpose and that both Upchurch and Attorney Provis violated Rule 11(b)(1).

### C.  Nature of Sanction

Having determined that plaintiff and plaintiff's counsel engaged in sanctionable conduct, the court must determine the nature of the sanctions to be imposed.  District courts are afforded broad, although not unlimited, discretion in setting an appropriate sanction award.  *Divane v. Krull Elec. Co.,* 319 F.3d 307, 314 (7th Cir. 2003).  Rule 11(c)(4) provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c)(4). "[T]he main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it or punish the offender." Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1336.3 (4th ed.) (citing Fed. R. Civ. P. 11, Advisory Committee Note, 1993 Amendment). In light of this purpose, "if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Fed. R. Civ. P. 11, Advisory Committee Note, 1993 Amendment. Still, "under unusual circumstances," particularly for where a suit is brought for an improper purpose, "deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." *Id.* "Sanctions should be allocated among the persons responsible for presentation of the offending pleading, written motion or other paper, based upon their relative culpability." *See* Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 16 (2020).

The O'Briens request "that the Court award them costs and reasonable attorneys' fees they have incurred and will incur in defending this lawsuit, including the filing of the instant motion, as a sanction against Upchurch and his attorney for filing and maintaining a frivolous Complaint, along with any other sanctions the Court deems just and proper." (Pls.' Br. (dkt. #37) 20-21.) Similarly, Lucareli requests

> an order of sanctions against Plaintiff Timothy Upchurch and Timothy Provis, jointly and severally, directing them to pay

21

Lucareli's reasonable attorney's fees and expenses in defending this matter and briefing this Motion. The Court may wish to order Provis and Upchurch to show cause why it should not impose an appropriate deterrent penalty on them, including the payment to the Court itself in order to deter their conduct from occurring in the future. Finally, the Court should consider entering an order awarding Lucareli such additional relief as this Court deems just to which Lucareli is otherwise entitled as a matter of law.

(Pl.'s Br. (dkt. #75) 17.)

Given Upchurch's obviously improper purpose in bringing this patently frivolous lawsuit, as well as his history of harassment towards the O'Briens and their counsel, the court has little trouble concluding that a significant monetary sanction is necessary to deter future violations.  More specifically, the court finds that this is a circumstance in which an award of reasonably attorneys' fees and costs directly to those injured by the violation -- namely, the O'Briens and Lucareli -- would be appropriate, in particular because of the personal nature of Upchurch's motivation in bringing the suit.  *See Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 403 (6th Cir. 2009) (explaining that "although it is clear that Rule 11 is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation").  Nevertheless, defendants have not yet produced evidence of their expenses, and so the court cannot assess specifically whether such an award would in fact be reasonably calculated to deter future improper behavior.  Accordingly, not later than September 13, 2021, the O'Briens and Lucareli may submit an itemized bill of their reasonable attorneys' fees and costs associated with defending this suit.  Upchurch may have 21 days to object to any of these expenses.  Additionally, because the ability to pay the sanctions is a factor in determining whether a sum is reasonably

calculated to deter future improper behavior, *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 988 (Fed. Cir. 2000), in responding to the defendants' proffer, Upchurch may submit evidence regarding his ability to pay the proposed amount.

As for Attorney Provis's role in this suit, he is required to disgorge any amounts paid to him by Upchurch in prosecuting this lawsuit. *See* Joseph, Sanctions: The Federal Law of Litigation Abuse § 16 ("As a Rule 11 sanction, the trial judge . . . may preclude counsel from charging his or her client for services rendered in committing the violation."); *Markwell v. County of Bexar*, 878 F.2d 899, 903 (5th Cir. 1989) (affirming Rule 11 sanction against counsel that, inter alia, precluded him from charging his client for the time spent in filing two frivolous motions). Those funds are to be made payable to the court's fund to support the costs incurred by *pro bono* counsel in this district.

## ORDER

IT IS ORDERED that:

1) Defendants' motions for sanctions (dkts. #36, 67, 75) are GRANTED.

2) Both Upchurch and Attorney Provis are jointly and severally liable to the O'Briens for the reasonable expenses, including attorneys' fees, caused by their violation of this court's discovery order. Not later than September 13, 2021, the O'Briens may submit an itemized bill of these expenses. Plaintiff may have 21 days to object to any of these expenses. At that point, the court will enter an appropriate award under Rule 37.

3) Not later than September 13, 2021, the O'Briens and Lucareli may submit an itemized bill of any reasonable expenses, including attorneys' fees and costs, they incurred as a result of having to defend against this lawsuit. Upchurch may have 21 days to object to any of these expenses. At that point, the court will enter an appropriate award to both under Rule 11.

4) Not later that September 13, 2021, Attorney Provis is ordered to disgorge all amounts paid for his work in prosecuting this lawsuit to the Clerk of Court for the Western District of Wisconsin, along with all records documenting those payments to date.

Entered this 13th day of August, 2021.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

24